UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ROBERT KIRBY :
:
v. : C.A. No. 07-422A
:
MICHAEL J. ASTRUE, :
Commissioner of the Social Security :
Administration :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on November 19, 2007 seeking to reverse the decision of the Commissioner. On May 12, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 8). On June 12, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on December 29, 2004, alleging disability as of December 31, 2000. (Tr. 76-78). Plaintiff's amended onset date is June 9, 2004. (Tr. 40). Plaintiff's insured status for DIB expired on March 31, 2006. Id. The application was denied initially (Tr. 66, 73-75) and on reconsideration. (Tr. 67, 69-71). Plaintiff filed a request for an administrative hearing. (Tr. 68). On January 5, 2007, a hearing was held before Administrative Law Judge Martha H. Bower (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 35-65). At the hearing, Plaintiff amended his alleged disability onset date to June 9, 2004. (Tr. 13, 40).

On February 21, 2007, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 10-23). Plaintiff appealed to the Appeals Council by filing a request for review. (Tr. 8-9). The Appeals Council denied Plaintiff's request for review on September 20, 2007. (Tr. 4-7). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the Appeals Council was egregiously mistaken in denying his request for review and that it should have remanded this case to the ALJ to consider post-hearing evidence. Plaintiff also contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ based such assessment on an erroneous review of the medical evidence.

The Commissioner disputes Plaintiff's claims and asserts that Plaintiff has not presented a reviewable Appeals Council decision, and that the ALJ's decision denying disability benefits is supported by substantial evidence and must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

Plaintiff was fifty-two years old at the time of the ALJ hearing (Tr. 76), has a twelfth-grade education (Tr. 134) and worked as a counter top fabricator, furniture remodeler and bartender. (Tr. 41, 86, 110). Plaintiff alleged disability due to back and hip pain. (Tr. 42, 129).

Plaintiff reported to the Commissioner that his pain began when he slipped on ice and fell in December 2000. (Tr. 108). In February 2001, Plaintiff sought treatment for a broken right wrist resulting from this fall, which eventually healed. (Tr. 136, 139). Plaintiff received chiropractic care

in 2001 and 2002 for pain in his neck, back and left leg, which improved somewhat with treatment. (Tr. 160, 162, 166-169).

In September 2004, Plaintiff went to Rhode Island Hospital complaining of pain and difficulty walking related to his December 2000 fall. (Tr. 143). He stated that he had not sought treatment in the past due to a lack of health insurance. (Tr. 141, 143). On exam, he appeared to be in moderate distress, and had decreased range of motion and an antalgic gait. (Tr. 142). He was assessed with acute sciatica and was prescribed Motrin, Valium and Vicodin. (Tr. 142, 144).

In January 2005, Plaintiff reported that he lived with his elderly mother and they did light housekeeping and prepared meals together. (Tr. 109, 118-119). He also could drive, shop, read, watch television, and he socialized twice a week for a few hours but was "pretty much done for the day" by mid-afternoon. (Tr. 109, 118, 120-122).

In a January 7, 2005 letter to the State Disability Determination Services ("DDS"), Plaintiff's former chiropractor, Dr. Roussel, stated that his treatment provided some temporary relief of Plaintiff's discomfort, and he opined that Plaintiff could sit or stand for only fifteen minutes at a time. (Tr. 165). Dr. Roussel could not definitively opine on the cause as Plaintiff "can't afford the diagnostic tests (MRI or CAT Scan) to do so." Id.

On February 8, 2005, Dr. David Quigley, an orthopedic surgeon, performed a consultative examination of Plaintiff, who complained of pain in his lower back, left leg and left foot. (Tr. 170). Plaintiff could use stairs with a handrail, drive and walk without a cane or other assistive device. Id. On exam, he walked with external rotation of each leg and could walk easily on his toes but had a partial foot drop when heel walking on the left. (Tr. 171). He could bend forward to within four inches of touching his toes and had full straight leg raising. Id. Dr. Quigley assessed a partial foot

drop on the left side which was likely the result of a disc injury and which did not affect Plaintiff's ability to walk, move about, sit, stand or drive. Id. Plaintiff stated that he could sit for two to three hours at a time, stand for one to two hours, walk one-eighth of a mile, lift ten to twenty pounds and bend over. Id. Dr. Quigley opined that Plaintiff would have difficulty with extremely heavy work but could do moderate to light work and any type of work in a seated position or with a combination of sitting, standing and walking and was not completely disabled. (Tr. 171-172).

On February 22, 2005, Dr. John Bernardo, a state agency physician, reviewed the record available at that time and opined that Plaintiff could perform light exertional work with no climbing of ladders, ropes or scaffolds and with occasional climbing of stairs or ramps and occasional crouching or crawling. (Tr. 174-175). He further opined that Plaintiff needed to avoid concentrated exposure to temperature extremes, wetness, humidity, respiratory irritants and workplace hazards. (Tr. 177).

On March 11, 2005, Plaintiff saw Dr. Katherine Richman, reporting that his back pain had mostly resolved but that he had persistent left leg pain stemming from his 2000 fall. (Tr. 184). He reported smoking one and a half packs of cigarettes a day and drinking ten to twelve beers per day. Id. On exam he had decreased sensation in his left leg, slightly decreased strength in one of his lower extremities (unspecified), and he was unable to walk on his toes or heels. (Tr. 185). Dr. Richman suspected that Plaintiff might have neuropathic pain and prescribed Neurontin. Id. Plaintiff returned to Dr. Richman on April 4, 2005, reporting that he still had pain but was not taking the prescribed dosage of Neurontin. (Tr. 191). He had strength of 4/5 in his right leg and 5/5 in his left leg, and Dr. Richman instructed him to take his Neurontin as prescribed. Id. An MRI study of

Plaintiff's lumbar spine showed an L4-L5 left lateral disc protrusion compressing on the left L5 nerve root. (Tr. 183).

On September 13, 2005, Dr. Joseph Callaghan, a state agency physician, reviewed the record available at that time and opined that Plaintiff could perform light exertional work with occasional use of the left leg for pushing/pulling and that he could not climb ladders, ropes or scaffolds but could perform other postural movements occasionally and needed to avoid hazards. (Tr. 213-216).

On September 13, 2005, Dr. Keith Monchik saw Plaintiff for complaints of lower back pain radiating into his left leg. (Tr. 221). On exam, Plaintiff exhibited some pain in the lumbar musculature, leg strength of 4/5 in the L4-L5 and S1 nerves and decreased reflexes at the left knee and ankle. Id. Dr. Monchik referred Plaintiff for physical therapy and recommended Motrin and epidural injections as an alternative to therapy. (Tr. 222). Plaintiff saw Dr. Richman the next day and was angry and upset because, at his visit with Dr. Monchik, he was informed that he would be a poor candidate for surgery due to his continued smoking. (Tr. 223). Plaintiff lived with his mother and continued to smoke one to two packs of cigarettes a day and to drink six beers per day. Id. Dr. Richman increased Plaintiff's Neurontin dosage and advised him to consider pursuing the physical therapy and injections. (Tr. 223-224). Plaintiff was "very opposed" to Dr. Richman's advice. (Tr. 224).

On March 10, 2006, Plaintiff returned to Dr. Richman to follow up on his back pain and other health concerns and reported that the Neurontin helped the back pain, though he recently aggravated this condition shoveling snow. (Tr. 230). Plaintiff continued to drink six beers per day and smoke a pack of cigarettes a day, and he was not ready to quit either activity. Id. He was the sole caretaker of his elderly mother, who had dementia. Id. On exam, Plaintiff was in no acute

distress, and Dr. Richman increased his Neurontin dosage and also gave him Vicodin. (Tr. 231). Plaintiff returned to Dr. Richman on April 7, 2006, and reported doing well. (Tr. 233). He had decreased his smoking and drinking somewhat, and reported some relief of his back pain with Neurontin. Id. On exam, he was in no acute distress, and Dr. Richman discontinued his Vicodin and prescribed Ibuprofen. (Tr. 233-234). On May 19, 2006, Plaintiff reported to Dr. Richman that he had some relief of his pain with Ibuprofen and continued to cut down on smoking and drinking. (Tr. 235).

On September 6, 2006, Plaintiff saw Dr. Krzysztof Kopec to have forms completed and have his prescriptions refilled. (Tr. 237). Plaintiff had "no specific complaints" and had been "fine with pain well tolerated," and "denie[d] any symptoms at this point." Id. Plaintiff further reported that his pain was tolerable with medication and that he had pain and tingling in his left leg that got worse with walking or physical activity. Id.

In October of 2006, Plaintiff reported to the Commissioner that he had pain in his back and numbness and pain in his legs and alleged an inability to stand for prolonged periods or to lift. (Tr. 130). He reported that he had worked twelve hours a week as a bartender but stopped working because he could not do the standing, walking or lifting required of that job. Id. Plaintiff testified that he could not work due to constant back and left leg pain and that the back pain was more problematic. (Tr. 42). His medication helped the pain which varied depending on his activities. (Tr. 42-43). He testified that his pain was at an 8/10 without medication and a 7/10 with medication. Id. He testified that he did not want to have injections for fear that they would mask his pain, causing him to accidentally injure himself. (Tr. 44). He testified that he could not afford physical therapy and that since his chiropractic care did not help, he did not think that physical therapy would

help either. (Tr. 45-46). Plaintiff estimated that he could sit for two hours and walk for twenty minutes. (Tr. 55). He testified that he had difficulty showering and putting on shoes and socks. (Tr. 49). He cooked, performed light housework, took his mother on errands and visited a social club every six weeks. (Tr. 49, 51-52).

The ALJ decided this case adverse to Plaintiff at Step 5. The ALJ determined that Plaintiff's back disorder was a severe impairment and that, as of his date last insured (March 31, 2006), Plaintiff was limited to work at the light exertional level. (Tr. 16-17). Plaintiff's RFC also limited the use of foot controls with his left leg to occasionally and other postural activities to occasionally. (Tr. 18). Based on Plaintiff's RFC and testimony from the VE, the ALJ concluded that Plaintiff was not disabled because, between the amended onset date (June 9, 2004) and his date last insured (March 31, 2006), he could have performed several unskilled, light exertion jobs that existed in significant numbers. (Tr. 21-22).

**A. Plaintiff Has Not Presented a Reviewable Appeals Council Decision**

Plaintiff contends that the Appeals Council erred in refusing to remand based upon additional evidence submitted after the ALJ's decision. (Tr. 9, 245-251). In particular, Plaintiff points to medical reports/evaluations completed by Dr. Kopec on September 6, 2006 and January 24, 2007. (Tr. 246-251). Plaintiff asserts that the Appeals Council erred by not remanding this case to the ALJ to consider this additional evidence or "at the very least [it] should have explained its reasoning in rejecting it."[1] (Document No. 8 at 9).

[1] Plaintiff has provided no persuasive authority for his argument that remand to the Appeals Council is required because of a failure to adequately explain its reasoning. Such a rule would result in automatic remands in most cases since the Appeals Council often does not, and is not required to, provide a detailed explanation of its decisions. See Waters v. Astrue, 495 F. Supp. 2d 512, 514-515 (D. Md. 2007) (failure of Appeals Council to explain how it evaluated new evidence presented to it does not require remand).

Generally, the discretionary decision of the Appeals Council to deny a request for review of an ALJ's decision is not reviewable. A judicial review under 42 U.S.C. § 405(g) is typically focused on the findings and reasoning of the ALJ, i.e., whether the ALJ's findings are supported by substantial evidence and whether the ALJ has properly applied the law. Of course, it makes no sense from an efficiency standpoint for a reviewing court to spend time and resources critiquing the work of the Appeals Council when it has jurisdiction to review the underlying and operative ALJ decision. In other words, reversible error by an ALJ can be remedied by the Court regardless of what the Appeals Council did or did not do.

The First Circuit has, however, held that review of Appeals Council action may be appropriate in those cases "where new evidence is tendered after the ALJ decision." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). In such cases, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id. This avenue of review has been described as "exceedingly narrow." Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287 (D. Mass. Dec. 22, 2006). Further, the term "egregious" has been interpreted to mean "[e]xtremely or remarkably bad; flagrant," Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting Black's Law Dictionary (7th ed. 1999)).

Here, the Appeals Council issued a "boiler plate" denial of Plaintiff's Request for Review. (Tr. 4-6). It noted that the "additional evidence" submitted by Plaintiff was considered, and it concluded that such evidence did "not provide a basis for changing the [ALJ's] decision." (Tr. 4-5). The additional evidence is not substantively discussed by the Appeals Council. Plaintiff contends that the Appeals Council's failure to articulate its reasoning makes it impossible to apply the "egregious mistake" standard.

While Plaintiff's point has some appeal at first blush, it is exposed as flawed when you look closely at the First Circuit's reasoning in Mills. In Mills, the First Circuit recognized that an Appeals Council denial of a request for review has all the "hallmarks" of an unreviewable, discretionary decision. Mills, 244 F.3d at 5. The Appeals Council is given a great deal of latitude under the regulations and "need not and often does not give reasons" for its decisions. Id. Thus, the First Circuit "assume[d] that the Appeals Council's refusal to review would be effectively unreviewable if no reason were given for the refusal." Id. at p. 6. It did, however, create a narrow exception for review when the Appeals Council "gives an egregiously mistaken ground for [its] action." Id. at p. 5. The First Circuit did not find this result to be a "serious anomaly" because "there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple 'review denied' decisions that the Appeals Council must issue every year." Id. at p. 6. Plaintiff's argument is basically an attempt to turn the narrow Mills rule inside/out.

Even if this Court concluded that Plaintiff has presented a decision reviewable under Mills, Plaintiff has shown no error. Dr. Kopec did not treat Plaintiff during the relevant period. Since Plaintiff's date last insured is March 31, 2006, the issue is whether Plaintiff has established disability on or prior to that date. The "new" evidence proffered by Plaintiff to the Appeals Council on March 23, 2007 confirms that Dr. Kopec treated Plaintiff from July to September 2006 (subsequent to the relevant period). (Tr. 248). The evaluations obtained from Dr. Kopec by Plaintiff's counsel were completed five months after the conclusion of any treating relationship. Finally, the "new" evidence is arguably cumulative as the record before the ALJ included treatment records from Rhode Island Hospital (Ex. 9F) including clinical notes from Dr. Kopec. (Tr. 237-238).

Since Plaintiff proffered the "new" evidence to the Appeals Council, it is undisputed that the Mills test and not the more forgiving Evangelista test applies. See Ortiz Rosado, 304 F. Supp. 2d at 67 n.1. Plaintiff has not established that the Appeals Council was "egregiously mistaken" in its decision to deny Plaintiff's request for review. Plaintiff's attorney could have sought an opinion from Dr. Kopec and submitted it to the ALJ before she issued her decision. He did not do so, and the Court must review the ALJ's decision based on the record before her at the time. Further, although the ALJ did not have the opportunity to consider such opinion, she did have all or most of the underlying records when she rendered her decision. Plaintiff has shown no error.

**B. The ALJ's RFC Assessment is Supported by Substantial Evidence**

Plaintiff's second argument is that the ALJ's RFC assessment is flawed because it is based on an ambiguous medical report, opinions from medical consultants who had not seen the entire record and she did not consider the opinion of the treating chiropractor. The ALJ concluded that Plaintiff could perform work at the light exertional level with occasional use of the left leg for foot controls and other postural limitations. (Tr. 17, 18).

In her decision, the ALJ thoroughly analyzes the evidence of record and explains the basis for her RFC assessment. Plaintiff has not shown that the ALJ's conclusion is not adequately supported. Plaintiff first challenges the ALJ's reliance on Dr. Quigley's 2005 opinion that Plaintiff could perform "moderate to light work." (Tr. 20, 171). Plaintiff unsuccessfully attempts to manufacture an ambiguity in Dr. Quigley's opinion by misstating his conclusion. (Tr. 40). There is nothing ambiguous about Dr. Quigley's opinion. (Ex. 4F). He examined Plaintiff and concluded that he could perform "moderate to light work" and was not "completely disabled." (Tr. 171-172). He also opined that Plaintiff could do "any type of work in a sitting position or a combination of

sitting, standing [and] walking." (Tr. 172). (emphasis added). There is no inconsistency between Dr. Quigley's opinion and the ALJ's conclusion that Plaintiff could perform a limited range of light work.

Plaintiff also takes issue with the ALJ's failure to discuss in detail the opinion of his treating chiropractor, Dr. Roussel. Plaintiff treated with Dr. Roussel for back pain in 2001 and 2002. (Ex. 3F). On January 7, 2005, Dr. Roussel opined that Plaintiff was significantly restricted in his ability to stand and sit (limited to fifteen minutes) and "that his ability to perform any job is restricted." (Tr. 165). However, Dr. Roussel candidly admitted that his opinion was based on "limited examination findings" and Plaintiff's subjective complaints of pain, and that it had not been verified by any diagnostic testing. Id. The ALJ did not ignore Plaintiff's chiropractic care as alleged. In making her Step 2 finding, the ALJ relied in part on the fact that Plaintiff received "chiropractic care" for his back injury in 2001 and 2002. (Tr. 16). The ALJ cannot be faulted for not placing much significance on Dr. Roussel's 2005 total disability opinion. The opinion is not well supported, contradicted by other medical evidence and comes from a provider, a chiropractor, who is not an "acceptable medical source" under the Commissioner's regulations.

Finally, Plaintiff argues that the ALJ erred by relying on the opinions of Dr. Bernardo (Ex. 5F) and Dr. Callaghan (Ex. 8F). Plaintiff contends that the ALJ's reliance on these opinions is misplaced because they are based on an incomplete record. Dr. Bernardo's assessment was completed on February 22, 2005 and Dr. Callaghan's on September 13, 2005. As noted above, the relevant period for Plaintiff's claim is June 9, 2004 through March 31, 2006 – a twenty-two month period. Dr. Bernardo's opinion was rendered in the ninth month and Dr. Callaghan's in the sixteenth month. As these opinions were rendered in the heart of the relevant period, Plaintiff's

incompleteness argument falls short. Since Plaintiff's injury dates back to a fall occurring in December 2000, the state agency examining physicians had a sufficient record before them to render their assessments. Further, the ALJ did not base her RFC assessment solely on those assessments. They were considered in the context of the entire medical record. (Tr. 20).

Plaintiff has shown no error in the ALJ's RFC assessment and it is entitled to deference.

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED. Final judgment shall enter in favor of the Commissioner.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 17, 2008